CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
MAR 02 2006
JOHN F CORCORAN, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONELL J. BLOUNT, | ) |
| Plaintiff, | ) Civil Action No. 7:04CV00429 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| GENE M. JOHNSON, et al., | ) By: Hon. Glen E. Conrad |
| Defendants. | ) United States District Judge |

Donell J. Blount, a Virginia inmate proceeding pro se, filed this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5.[1] The case is presently before the court on the remaining defendants' motion for summary judgment.[2] For the reasons set forth below, the motion will be denied.

## Factual and Procedural Backgound

The plaintiff is incarcerated at Red Onion State Prison. The plaintiff's original complaint included five groups of claims. The court previously dismissed two groups of claims, and the plaintiff voluntarily dismissed a third claim.

In the first of his two remaining groups of claims, the plaintiff alleges that Correctional Officers J. Fleming and T. Vanover used excessive force against him on May 5, 2004. The plaintiff further alleges that Correctional Officers H. Grear and R. Sutherland failed to protect him from Fleming and Vanover. In his second group of claims, the plaintiff alleges that Duncan Mills

---

[1] Although the plaintiff's original complaint did not include a RLUIPA claim, the plaintiff later amended his complaint to include a claim under this statute (docket #6).

[2] The defendants filed the motion for summary judgment on November 22, 2005. After receiving the opportunity to engage in discovery, the plaintiff filed a response to the defendants' motion on January 23, 2006. Upon reviewing the defendants' motion and accompanying exhibits, the court discovered that three pages from the materials had not been electronically filed. Therefore, the court requested the defendants to submit the missing pages. The defendants electronically filed complete copies of the documents at issue on February 21 and 22, 2006 (docket #81, #82, #83).

violated his rights under the First Amendment and RLUIPA by denying his request for the Common Fare Diet.[3] The plaintiff seeks monetary damages.

On March 4, 2005, Fleming, Vanover, Grear, Sutherland, and Mills filed their first motion for summary judgment. The defendants argued that the plaintiff failed to exhaust available administrative remedies. After conducting an evidentiary hearing on the exhaustion issue, a United States Magistrate Judge issued a Report and Recommendation in accordance with 28 U.S.C. § 636(b). The magistrate judge recommended granting the defendants' motion as to the plaintiff's excessive force claim, and denying the defendants' motion as to the plaintiff's Common Fare Diet claims. The magistrate judge determined that a genuine issue of material fact remained as to whether the plaintiff exhausted his administrative remedies with respect to the Common Fare Diet claims, and that this issue should be resolved by the ultimate trier of fact.

The defendants subsequently filed an objection to the magistrate judge's report. The defendants argued that the magistrate judge should have resolved the disputed issue of fact himself, based upon the evidence presented during and after the evidentiary hearing. On June 28, 2005, the court overruled the defendants' objection and adopted the magistrate judge's report in its entirety. The court held that there was a genuine issue of material fact with regard to exhaustion of administrative remedies. The court also adopted the magistrate judge's report as to the plaintiff's excessive force claim. The court noted that the plaintiff failed to file any objections to the report. See Wells v. Shriners Hospital, 109 F.3d 198, 199 (4th Cir. 1997) (failure to file written objections to the Report and Recommendation constitutes a waiver of the right to further contest those issues).

---

[3] As the defendants explain in their motion for summary judgment, the Common Fare Diet is provided to inmates whose religious dietary needs cannot be met by the regular menus offered by state correctional institutions.

2

Upon receiving the court's opinion and order, the plaintiff filed a motion to alter or amend judgment or for reconsideration pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The plaintiff contended that he did not receive a copy of the magistrate judge's report, and that he was therefore unable to file any timely objections. By order entered August 2, 2005, the court gave the plaintiff an additional ten days to file any objections to the magistrate judge's report. The plaintiff subsequently filed an objection on August 11, 2005. The plaintiff alleged that he filed informal complaints regarding the alleged assault on May 5, 2004. After the plaintiff received responses to his informal complaints, he filed a formal grievance regarding the alleged assault on May 14, 2004. When prison officials failed to respond to his formal grievance, the plaintiff filed an appeal to the regional ombudsman on June 18, 2004. The plaintiff alleged that he received no response from the regional ombudsman. The plaintiff argued that he testified under oath as to these actions during the evidentiary hearing. The plaintiff also argued that he provided this information in a sworn affidavit filed on March 11, 2005, as well as in the verified statement submitted with his complaint.

The defendants filed a response to the plaintiff's objection on September 15, 2005. Upon reviewing the plaintiff's objection and the defendants' response, the court concluded that a genuine issue of material fact exists as to whether the plaintiff exhausted his administrative remedies with respect to his excessive force claim. Therefore, the court vacated the opinion and order entered on June 28, 2005 to the extent that the court granted the defendants' motion for summary judgment as to that claim.

## Standard of Review

Fleming, Vanover, Grear, Sutherland, and Mills have now moved for summary judgment on the merits of the plaintiff's remaining claims. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material

3

fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indust., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

A. Excessive Force

To support his excessive force claim against Vanover and Fleming, the plaintiff provided the following summary of events in a sworn affidavit. The plaintiff alleges that Vanover and Fleming were responsible for escorting him to the recreation area on the morning of May 5, 2004. While walking toward the stairwell adjacent to the plaintiff's pod, the plaintiff, Vanover and Fleming came upon Sutherland and Grear. Sutherland opened the door leading to the stairwell and held it for Grear to enter the pod. After Grear walked past the plaintiff and the other officers, Vanover and Fleming shoved the plaintiff into Sutherland, who was still holding the door. The plaintiff alleges that Vanover and Fleming then slammed the plaintiff's face into the floor of the stairwell, repeatedly beat his head and body, and bent his finger back until it felt as if it would break. The plaintiff further alleges that the officers' actions resulted in a large knot on the left side of his face; a knot and peeled skin behind his right ear; peeled skin on his forehead, left eyelid, and left temple; a bruise and gash on his left wrist; bruises on his right wrist; cuts and peeled skin on his legs and ankles; and bruises on his back. The plaintiff alleges that although Grear and Sutherland witnessed the attack, neither officer attempted to stop it.

4

After the attack, the plaintiff was returned to his cell. The plaintiff claims that Vanover subsequently pulled the plaintiff's right arm through the tray slot, using the "dog leash" attached to the plaintiff's handcuffs. The plaintiff alleges that this caused a bruise, a knot, and peeled skin on his right forearm, and a gash on one of his right knuckles. The plaintiff further alleges that he experienced extreme pain for days, that he was unable to sleep on his back, that he was unable to properly use his right hand for weeks, and that he suffered permanent scarring. Additionally, the plaintiff alleges that he experienced headaches, chest pain, dizziness, and depression.

In response to the plaintiff's allegations, the defendants have provided a different version of events. Vanover and Fleming specifically deny having engaged in any assaultive conduct. Instead, Vanover and Fleming explain that they attempted to escort the plaintiff to the recreation area on the morning of May 5, 2004. When the plaintiff found out that it was raining, the plaintiff cursed and stated that he would not go outside in the rain. At that time, Vanover and Fleming escorted the plaintiff back to his cell. The plaintiff was then ordered to kneel on the floor so that his leg irons could be removed. Blount complied with the officers' orders, his leg irons were removed, and the officers exited the cell. When the officers attempted to remove the plaintiff's handcuffs through the tray slot, the plaintiff unexpectedly spun around, swung his right arm through the slot, and punched Vanover's right hand.

Sutherland and Grear specifically deny having witnessed Vanover and Fleming assault the plaintiff. Sutherland and Grear explain that they were directed to remove the plaintiff from his cell so that he could be assessed by a nurse. However, Blount refused to go to the triage area to be assessed. Neither officer was aware of the reason for the medical assessment.

The defendants have provided an affidavit from a registered nurse, V. Phipps, who reviewed the plaintiff's medical records. The medical records indicate that the plaintiff was examined by

5

Nurse Lester at approximately 8:30 a.m. on May 5, 2004. Nurse Lester noted an abrasion on one of the plaintiff's right knuckles that was one-forth of an inch in diameter, as well as an abrasion on the plaintiff's right forearm, which was approximately one inch in length. The nurse also observed a half-inch area of dried blood on the plaintiff's right cheek. While the nurse did not observe any bruising or redness near the dried blood, the nurse noted that she was unable to examine the area for injury because the plaintiff refused to wash his cheek. Nurse Lester also indicated that she examined the plaintiff's upper torso through the cell window while his shirt was removed. No redness or bruising was observed.

The plaintiff was examined again at approximately 9:30 a.m. after he complained of chest pain. The plaintiff's medical records indicate that the plaintiff denied having any chest pain during the examination. Instead, the plaintiff reported that he had a headache.

In response to the defendants' motion for summary judgment, the plaintiff denies having ever attempted to hit Vanover. The plaintiff also insists that he did not remove his shirt when he was examined by Nurse Lester, and that Nurse Lester only saw his face, hand, and arm. The plaintiff explains that he refused to go with Grear and Sutherland to the triage area for a more complete examination, because they did not stop Fleming and Vanover from assaulting him.

To prevail on an excessive force claim under the Eighth Amendment, an inmate must show, objectively, that the use of force was contrary to contemporary standards of decency and that he suffered more than de minimis pain or injury. See Hudson v. McMillian, 503 U.S. 1, 7, 9 (1992). He must also satisfy a subjective component by showing that the force was applied "maliciously and sadistically for the purpose of causing harm" and not "in a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320-321 (1986); see also Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

According to the plaintiff's version of the events, as provided in his sworn affidavit, no force was necessary. Without provocation, Vanover and Fleming slammed the plaintiff's face into the floor of the stairwell, repeatedly beat his head and body, bent his finger back until it felt as if it would break, and violently pulled his arm through the tray slot. Construed in the light most favorable to the plaintiff, the court concludes that the plaintiff's allegations create a genuine issue of material fact as to whether Vanover and Fleming used force against him "maliciously and sadistically for the purpose of causing harm" and not "in a good faith effort to maintain or restore discipline." Whitley, 475 U.S. at 320-321; Williams, 77 F.3d at 761.

As for the extent of the plaintiff's injuries, the plaintiff states in his affidavit that he suffered multiple lacerations and bruises on various parts of his body, extreme pain, and permanent scarring. Although the defendants deny the plaintiff's claim and emphasize that the alleged injuries are not documented in the plaintiff's medical records, the plaintiff alleges in his affidavit that Nurse Lester only examined his face, hand, and arm after the incident. The plaintiff further alleges that he refused go with Sutherland and Grear to the triage area for a more complete examination, because these officers failed to protect him from Fleming and Vanover. Construing the evidence in the light most favorable to the plaintiff, the court concludes that a genuine issue of material fact exists as to whether the plaintiff suffered more than de minimis injuries. Accordingly, the court will deny the motion for summary judgment with respect to the plaintiff's excessive force claim.

B.  Failure to Protect

As previously stated, the plaintiff claims that Grear and Sutherland failed to protect him from the use of excessive force by Vanover and Fleming. The plaintiff alleges that Grear and Sutherland witnessed the attack in the stairwell, but did nothing to stop it. Construing the evidence in the light most favorable to the plaintiff, the court concludes that there is a genuine issue of

7

material fact as to whether Grear and Sutherland knew of and disregarded an excessive risk to the plaintiff's safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Therefore, the court will deny the motion for summary judgment as to this claim.

C. Common Fare Diet

The plaintiff alleges that Duncan Mills violated his rights under the First Amendment and RLUIPA by denying his request for the Common Fare Diet. To support these claims, the plaintiff alleges that he has been a member of the House of Yahweh since June 2003, and that his religion requires him to follow the Common Fare Diet. The plaintiff applied for the diet on April 18, 2004. Although prison officials at Red Onion recommended approval, the plaintiff's request was ultimately denied by Mills, acting on behalf of the Virginia Department of Corrections' Central Classification Services Division (CCS). CCS determined that the plaintiff's religion did not require the diet. Mills now acknowledges that soon after the plaintiff's request was denied, the Virginia Department of Corrections decided to add the House of Yahweh to the list of religions requiring a special diet.[4]

1. First Amendment

The Free Exercise Clause of the First Amendment prohibits the adoption of laws designed to suppress religious beliefs or practices. See Morrison v. Garraghty, 239 F.3d 648, 656 (4th Cir. 2001). "Its protections, including its directive that no law shall prohibit the free exercise of religion, extends to the prison environment." Id. (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Ali v. Dixon, 912 F.2d 86, 88-89 (4th Cir. 1990)). However, a prison inmate's constitutional rights can be limited to achieve legitimate penological objectives. O'Lone, 482 U.S.

---

[4] It appears that the plaintiff's efforts to obtain the Common Fare Diet remain ongoing.

8

at 348. A decision that infringes upon a prisoner's constitutional rights will nevertheless be upheld if it is "'reasonably related'" to promoting a legitimate penological interest. Id. at 349 (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)). In order to determine whether a regulation or decision is permissible, the court must consider four factors: (1) whether the disputed decision is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. Id. at 350-353; Turner at 89-90. The plaintiff bears the ultimate burden of establishing that a prison regulation or decision is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993).

In this case, Mills suggests that the court need not consider the Turner factors because the plaintiff's religious beliefs are not sincere. See Dehart v. Horn, 227 F.3d 47, 52 (3rd Cir. 2000) (explaining that "if a prisoner's request for a particular diet is not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor the request, and there is no occasion to conduct the Turner inquiry."). However, the issue of whether religious beliefs are sincerely held is a question of fact. See Mosier v. Maynard, 937 F.2d 1521 (10th Cir. 1991). While Mills emphasizes that the plaintiff is a significant disciplinary problem and that he reported to be a Christian in 2001, the plaintiff has provided sufficient evidence to create a genuine issue of material fact as to whether his current religious beliefs are sincerely held. The plaintiff has provided a sworn affidavit in which he states that he has been a member of the House of Yahweh since June 2003. The plaintiff has also provided copies of receipts demonstrating that he sent monetary donations to the House of Yahweh on multiple occasions in 2003 and 2004. Additionally,

9

the plaintiff alleges that he studies the Laws of Yahweh on a daily basis, and that he receives monthly religious publications. While Mills also emphasizes that the plaintiff recently indicated that the Nazarite Vow prohibits him from shaving his hair, the plaintiff explains in his affidavit that the Nazarite Vow is one of the 613 Laws of Yahweh.

Having concluded that the plaintiff has produced sufficient evidence to raise a genuine issue of material fact as to whether his religious beliefs are sincerely held, the court must determine whether the decision to deny the plaintiff's request for the Common Fare Diet was reasonably related to promoting a legitimate penological interest. Applying the Turner factors, the court is unable to conclude that Mills is entitled to summary judgment with respect to this issue. First, Mills has provided no evidence to support the argument that the decision to deny the plaintiff's request served any legitimate government interests. Although Mills argues that "the threat of manipulative action on the part of the inmate population," as well as the potentially prohibitive cost of administering the Common Fare Diet, justify the stringent process for reviewing Common Fare Diet requests, Mills draws no connection between these interests and the decision to deny the plaintiff's request. Second, the plaintiff alleges that he has limited alternative means of practicing his religion, since Red Onion does not offer any religious programs or activities that are compatible with the House of Yahweh's teachings. Considering the third Turner factor, there is no indication that prison officials, prison resources, or other inmates would be adversely affected if the plaintiff was provided the Common Fare Diet. The court notes that many other inmates within the Virginia Department of Corrections receive the diet. Lastly, the court is aware of no ready alternatives that would fully accommodate the plaintiff's rights. For these reasons, the court concludes that Mills is not entitled to summary judgment with respect to the plaintiff's First Amendment claim.

Case 7:04-cv-00429-JCT-PMS   Document 84   Filed 03/02/06   Page 10 of 13   Pageid#: 424

2. <u>RLUIPA</u>

The plaintiff also argues that the decision to deny his request for the Common Fare Diet violated RLUIPA. Section 3(a) of RLUIPA states as follows:

> [N]o government shall impose a substantial burden on religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling interest.

42 U.S.C. § 2000cc-1(a). Section 4(a) of the statute creates a private right of action that allows any person to "assert a violation of this chapter as a claim or defense in a judicial proceeding" and to "obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).

While Mills argues that this statute fails to "specify the manner in which administrative decisions are to be reviewed," the court disagrees. The plain language of the statute provides the appropriate standard. In order to prevail on a claim under § 3(a) of RLUIPA, the plaintiff must first demonstrate that the decision to deny his request for the Common Fare Diet imposed a substantial burden on his ability to exercise his religious beliefs. See <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 994 (9th Cir. 2005); <u>Midrash Sephardi, Inc. v. Town of Surfside</u>, 366 F.3d 1214, 1225 (11th Cir. 2004); <u>Civil Liberties for Urban Believers v. City of Chicago</u>, 342 F.3d 752, 760 (7th Cir. 2003). If the plaintiff meets his initial burden, the defendants must set forth evidence demonstrating that the decision was in furtherance of a compelling government interest and the least restrictive means of furthering that interest.[5] See <u>Ra v. Braxton</u>, Civil Action No. 7:04CV00637, 2005 U.S. Dist. LEXIS 12878 (W.D. Va. June 29, 2005) ("The statute requires the inmate to bear the burden of persuasion

---

[5] Thus, RLUIPA imposes a "higher standard of review than that which applies to constitutional free exercise claims." <u>Murphy v. Mo. Department of Corrections</u>, 372 F.3d 979, 986 (8th Cir. 2004).

11

concerning the substantial burden element. If the plaintiff can meet this requirement, the burden then shifts to the government for the remaining elements of the test.").

With this standard in mind, the court must first determine whether the plaintiff has provided sufficient evidence to demonstrate that the decision to deny his request for the Common Fare Diet placed a substantial burden on his ability to practice his religion. A government action does not cause a "substantial burden" if it merely results in an inconvenient or less desirable situation. See Woods v. Evatt, 876 F.Supp. 756, 762 (D.S.C. 1995) (interpreting the substantial burden requirement of the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb). Instead, "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004). In this case, the plaintiff contends, and Mills now acknowledges, that the House of Yahweh requires followers to eat a special diet. The plaintiff alleges that his dietary needs cannot be met by the prison's regular menu, and that he has lost weight as a result of not receiving the Common Fare Diet. The court concludes that such evidence is sufficient to satisfy the plaintiff's initial burden at this stage of the proceedings.

Since the court has already determined that Mills's motion for summary judgment fails under the comparatively less stringent "reasonable relation" test under the First Amendment, the court must conclude that he also fails to satisfy the heightened scrutiny of RLUIPA's "least restrictive means" test. Accordingly, the court will deny the motion for summary judgment as to the plaintiff's RLUIPA claim.

12

## Conclusion

For the reasons stated, the court will deny the defendants' motion for summary judgment. Because it appears that none of the parties have made a demand for a jury trial, the case will be referred to United States Magistrate Judge Pamela Meade Sargent, pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge shall conduct such proceedings as she deems appropriate, including an evidentiary hearing, and shall submit to the court a report setting forth findings of fact, conclusions of law, and recommended disposition.

The Clerk is directed to send certified copies of this opinion and the accompanying order to the plaintiff, counsel of record for the defendants, and Magistrate Judge Sargent.

ENTER: This 1st day of March, 2006.

*/s/ Jsn G Cnrad*
United States District Judge